James H. Fosbinder #7070
IVEY FOSBINDER FOSBINDER LLLC
A LIMITED LIABILITY LAW COMPANY
1883 Mill Street
Wailuku, Hawaii  96793
Telephone:  (808)242-4956
Facsimile: (808)249-0668
Email: jfosbinder@iff-law.com

Attorneys for Plaintiffs MAURO C. GOROSPE and
CAROLINA GOROSPE

**UNITED STATES DISTRICT COURT**

**DISTRICT OF HAWAII**

| | |
|---|---|
| MAURO C. GOROSPE and CAROLINA GOROSPE<br><br>Plaintiffs,<br><br>vs.<br><br>NEW CENTURY MORTGAGE CORPORATION; DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee Under Pooling and Service Agreement Dated July 1, 2004, Morgan Stanley ABS Capital I Inc., Trust 2004-HE5 Mortgage Pass Through Certificates Series 2004-HE5; BARCLAY CAPITAL REAL ESTATE, INC., d/b/a HOMEQ SERVICING; and DOES 1 through 20 inclusive,<br><br>        Defendants. | Civil No. CV10-00505 DAE KSC<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE UNDER POOLING AND SERVICE AGREEMENT DATED JULY 1, 2004, MORGAN STANLEY ABS CAPITAL I INC., TRUST 2004-HE5 MORTGAGE PASS THROUGH CERTIFICATES SERIES 2004-HE5'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:<br>Time:<br>Court:<br>Judge: |

**INTRODUCTION**

Plaintiffs MAURO C. GOROSPE and CAROLINA GOROSPE, through their counsel, JAMES H. FOSBINDER, submit this opposition to

Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee Under Pooling and Service Agreement Dated July 1, 2004, Morgan Stanley ABS Capital I Inc., Trust 2004-HE5 Mortgage Pass Through Certificates Series 2004-HE5's (hereinafter referred to as "DEUTSCHE BANK") Motion to Dismiss Plaintiffs' First Amended Complaint (hereinafter referred to as "FAC").

Plaintiffs oppose Defendant's motion on the grounds that the complaint, as amended, states cognizable causes of action and raises questions of fact whether DEUTSCHE BANK is truly entitled to foreclose the mortgage upon which this action is based.

Plaintiffs further aver that they have set forth fully cognizable claims for Fraudulent Misrepresentation, Unfair and Deceptive Trade Practices, Conspiracy to commit those acts, Intentional Infliction of Emotional Distress, Breach of Fiduciary Duty, and Unconscionability, or, by amendment, can cure any remaining issues as to pleading them.  They also believe that they have a further cause of action suggested by the facts for which they should be granted leave to include such cause, and request leave to amend their remaining claims.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiffs executed a Mortgage and Promissory Note (hereinafter referred to as "Note") on their real property located at 60 Wilikona Place, Wailuku, Hawaii (the Subject

Property), in favor of New Century Mortgage Corporation (hereinafter referred to as "NEW CENTURY"), on March 25, 2004. NEW CENTURY was aware that Plaintiffs' intended to rent the Subject Property until they could relocate and that the loan payments were higher than the rent Plaintiffs could charge, however, NEW CENTURY's agents told Plaintiffs that they would be able to refinance in a few years and obtain a lower rate loan.

Plaintiffs are informed and believe that soon after they signed the Mortgage, NEW CENTURY sold the mortgage to a third party, and that third party sold the Mortgage to Morgan Stanley ABS Capital I Inc., Trust 2004-HE5 Mortgage Pass Through Certificates Series 2004-HE5 (hereinafter referred to as the "Trust") in a process known as securitization.  Eventually, Plaintiffs were informed that they were to make payments to Defendant HOMEQ SERVICING (hereinafter referred to as "HOMEQ").

Plaintiffs attempted to modify their loan with HOMEQ but were unsuccessful.  When it became clear that a putative mortgagee intended to foreclose on the mortgage, Plaintiffs filed this action *pro se* hoping to stop it, because Plaintiffs believed that owing to numerous questionable sales, assignments, or other transfers of ownership of their Mortgage and Note, none of the Defendants is the actual owner of the Note.

Plaintiffs filed their original complaint *pro se* on September 1, 2010, and after retaining counsel, filed their

First Amended Complaint ("FAC") on February 22, 2011, naming DEUTSCHE BANK as a defendant for the first time.  DEUTSCHE BANK filed its Motion to Dismiss the FAC on April 28, 2011.

In the FAC, Plaintiffs have set forth factual detail concerning a purported "Assignment," and "Amended Assignment" of the Mortgage from the NEW CENTURY, executed by Noriko Colston and Tanya Blechinger, who purported to act for NEW CENTURY as Assistant Secretaries of Defendant Barclays Capital Real Estate (collectively "the Assignments").  See FAC, Exhibit A.  Plaintiffs' investigation reveals that NEW CENTURY filed for bankruptcy on or about April 2, 2007, and that a liquidation trustee had taken over all of NEW CENTURY's business affairs prior to the dates of both the Assignments.  See FAC ¶¶ 52, 59.  Plaintiffs maintain that the Assignments assign nothing, because NEW CENTURY, at the time, had nothing to assign and the Assignments, in that they imply that NEW CENTURY had an interest in the Subject Property when it did not, are false.  The false Assignments form the basis of Plaintiffs' UDAP and Fraudulent Misrepresentation claims.

Plaintiffs' ongoing investigation has revealed important information not known to them at the time they filed the FAC, and they now have a much better understanding of the relevant facts of the case.  Plaintiffs request leave to amend their complaint so as to allege the newly discovered facts and better

articulate their claims against the Defendants.  In addition, Plaintiffs believe that the false Assignments give rise to another cause of action for Slander of Title, and they request leave to amend the FAC so as to allege that cause of action.

**ARGUMENT**

**I. PLAINTIFFS' FRAUDULENT MISREPRESENTATION CLAIM HAS BEEN ADEQUATELY PLED OR CAN BE AMENDED TO STATE A CAUSE OF ACTION**

Plaintiffs respectfully contend that they have met the heightened pleading requirements for alleging fraud in the complaint.  Should the Court find otherwise, Plaintiffs believe they will be able to amend their pleading as to establish all elements of their claims.

Defendants appear to concede that Plaintiffs' allegations that DEUTSCHE BANK recorded a false document would be sufficient to satisfy that Defendants made a false representation of fact, and do not appear to controvert that such act was intentional. See Def.'s Mot. Dismiss at p.5, 11.

As alleged in the FAC, Barclays made a representation that it was possessed of the rights to the Mortgage in the Assignment.  See FAC ¶86.i.  Further, Plaintiffs have set forth specific facts that indicate the representation is false.  See FAC ¶¶59-64.  Barclays falsely stated it assigned an interest in the Subject Property it did not possess on August 11, 2009, and again on October 19, 2009, in Sacramento County, California.

DEUTSCHE BANK recorded the same false documents in the State of Hawaii Bureau of Conveyances on August 17, 2009, and October 27, 2009, respectively.  Those facts make up the "who, what, when, where, and how" of the false representation.  Plaintiffs have adequately pled those facts.

As to reliance, Plaintiffs respectfully submit that their reliance can relate back to the original transaction, because they are tied to a 30-year obligation with their lender, and with Barclays and HOMEQ as servicer.  Plaintiffs further submit that it is reasonable for them to have expected that the other party to the mortgage will not do anything that would cloud their title.  Had Plaintiffs known that Barclays would allow virtually anyone to become an "Assistant Secretary" of the company with virtually no oversight, and then allow that person to make whatever assignment or transfer of the Subject Property that person wished, they would not have entered into the transaction.  That is what happened here, and Plaintiffs have been damaged in that they have already gone to considerable expense to undo the false Assignments to avoid their consequences.

Consequently, Plaintiffs have established each and every element of their Fraudulent Misrepresentation claim.  However, should the Court feel that this claim needs further exposition,

Plaintiffs will amend their complaint to provide the necessary detail.

## II. PLAINTIFF HAS SUFFICIENTLY ALLEGED A UDAP VIOLATION

Plaintiffs respectfully submit that they have set forth a cognizable claim for a UDAP violation under H.R.S. §481A-3, as the result of DEUTSCHE BANK's recording of the false Assignment executed by MERS.

Hawaii's scheme of Unfair Trade Practices was constructed in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices for the protection of both consumers and honest business [persons]." *Ai v. Frank Huff Agency, Ltd.,* 61 Haw. 607, 616 (1980). The Hawaii Supreme Court has adopted the view that a trade practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *Hawaii Community Federal Credit Union v. Keka*, 94 Haw. 213, 228 (2000).

H.R.S. §481A-3 sets forth a number of traditional practices found to be deceptive or unfair, and then includes an "omnibus" provision that applies to any person who "[e]ngages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Based on the broad application of the UDAP statutes by the Hawaii courts, Plaintiffs respectfully aver that Barclay's creation, and DEUTSCHE BANK's recording of the false

Assignment fits within the scope of H.R.S. §481A-3.  See FAC, ¶96.f.  Nonetheless, should the Court so direct, Plaintiffs will amend their complaint to more clearly set forth their contentions.

### III. PLAINTIFFS HAVE STATED OR CAN AMEND THE COMPLAINT TO STATE A CLAIM FOR CIVIL CONSPIRACY

To the extent that Plaintiffs may not have tied their claim of civil conspiracy to any particular cause of action within their complaint, Plaintiffs respectfully submit that they are capable of alleging a conspiracy to commit a fraudulent misrepresentation and UDAP, and for a cause of action for slander of title.  Plaintiffs stand ready to amend their complaint to conform to the pleadings and request leave to amend.

### IV. PLAINTIFFS SUFFICIENTLY PLED A CLAIM FOR IIED

While Defendant has adequately set forth the elements of an IIED claim, they have failed to address the allegations in the FAC, and do not address the conduct Plaintiffs alleged against DEUTSCHE BANK and Barclays.

Courts have recognized that debt collection practices can result in emotional distress to debtors.  Any privilege a debt collector may have is vitiated if the collector uses outrageous means in seeking payment. *Ross v. Creel Publishing Co.*, 100 Cal.App.4th 736, 745 (2002).

Plaintiffs have properly alleged that HOMEQ AND DEUTSCHE BANK made a fraudulent misrepresentation, and base their IIED claim upon the same conduct (i.e. recording a false document and seeking to foreclose based upon that false document).  Such acts had the potential to cause Plaintiffs to lose a valuable asset. Further, Defendants' acts would not be privileged, since the document that HOMEQ executed and DEUTSCHE BANK recorded was false: neither is a proper debt collector based on the document. Barclays and DEUTSCHE BANK's acts were extreme and outrageous.

Nevertheless, Plaintiffs submit that because they have made a good faith effort to allege the specific elements of IIED and have largely succeeded, they can more specifically set forth the emotional distress they suffered.  The court can and should grant them leave to amend their claim as to their specific emotional distress.

**V.     PLAINTIFF HAS SET FORTH THE ELEMENTS OF A NEGLIGENCE CLAIM**

DEUTSCHE BANK's Motion appears to conflate the causes of action for negligence and breach of fiduciary duty.  See Defendant's Motion to Dismiss, pp. 12-13. To the extent that DEUTSCHE BANK's Motion alleges that Plaintiffs' complaint for negligence fails because DEUTSCHE BANK did not owe Plaintiffs a *fiduciary* duty, such contention is unsupportable in law.  In a negligence action, a defendant is merely required to recognize the following:

> [T]hat his conduct involves a risk of causing an invasion of another's interest if a reasonable man would do so while exercising
> (a) such attention, perception of the circumstances, memory, knowledge of other pertinent matters, intelligence, and judgment as a reasonable man would have; and
> (b) such superior attention, perception, memory, knowledge, intelligence, and judgment as the actor himself has.

Rest. (Second) Torts § 288.

Plaintiffs have set forth the circumstances that give rise to DEUTSCHE BANK's *general* (and <u>not</u> fiduciary) duty owed to them: that is, to avoid causing harm to them when it chose to engage in a non-judicial foreclosure process that could unjustly deprive them of their property. It is simply unnecessary that DEUTSCHE BANK be Plaintiffs' fiduciary for such a duty to arise, and DEUTSCHE BANK's contention to the contrary is untenable. Plaintiffs have fully set forth a claim for negligence.

**VI. PLAINTIFFS' REQUEST FOR LEAVE TO AMEND**

FRCP 15(a)(2) states that the Court shall grant a party leave to amend when justice so requires. The Supreme Court has long held that "[i]t is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Ninth Circuit holds "that this policy should be applied with 'extreme liberality.'"   *Keiter v. Penn Mut. Ins. Co.*, 900

F.Supp. 1339, 1342 (D.Haw. 1995).  Such liberality is tempered only by the requirement that defendant not be prejudiced, by having to resort to additional discovery.  *Id.*

### a. The Antitrust Violations Can Be Sufficiently Amended

Plaintiffs now believe that the filing of false documents executed by HOMEQ and recorded by DEUTSCHE BANK is part of a scheme agreed to and conducted by Defendants and others to control the residential mortgage market.  It has come to light that Defendants, along with several other large private banking institutions (collectively "the Big Banks"), agreed, beginning in or about 1994, to a scheme by which they would, and in fact did, set up a private system of recording interests in land in the United States that would give them a competitive advantage over smaller banking institutions to transfer mortgage loans freely into securitized pools of like mortgages.

The Big Banks used their control over the residential mortgage market by flooding it with capital and inflating the market for residential properties in the United States and thereby increasing the proportionally-based fees that such larger loans would generate. Such inflation manifested itself in a complete inversion of the order of mortgage loan creation and securitization. MERS members' pursuit of increased profits created a system of lending in which security instruments (mortgages and deeds of trust) are created, securitized and

marketed to investors prior to any loan actually being originated.

Once the Big Banks had control the market for the mortgages, they, as does any monopolist, turned to the task of maximizing return in all aspects of the business. Servicing the mortgages, including foreclosure, was then contracted out to those entities that would provide the lowest cost. The servicers did as little as possible to track the mortgages they serviced, and the securitization of such mortgages complicated the task.

This system of "streamlined" foreclosures has meant that homeowners, such as Plaintiffs, when they needed assistance with their mortgage, could not get it; they instead got (a) the "runaround," when the "servicers" they called promised to help with a modification and did nothing; and (b) the "shaft" when they were subject to a foreclosure by a party that did not have title to their mortgage or note.  As a result, they have suffered damages from excessive fees that have been added to their loan balances that they otherwise could have avoided had they been able to get through to someone who had authority to negotiate with them.  They have also been damaged in that they have been forced to expend money and time defending themselves from a wrongful foreclosure, brought by an entity with no standing to do so, instituted by the low bidders (mortgage servicers and foreclosure law firms) operating under contract

with a monolithic and supported by a monopolistic mortgage industry that demands the cheapest action.

Therefore, in light of the new information now available to them, Plaintiffs respectfully request that the Court grant them leave to amend their complaint as to the antitrust causes of action.

### b. Plaintiffs Request Leave to Amend to Include a Cause of Action for Slander of Title

Plaintiffs now believe that DEUTSCHE BANK's recording of the false Assignment and Amended Assignment has produced a cloud upon their title to the Subject Property, and has prevented them from selling or otherwise disposing or refinancing their interest in it.  Such action amounts to a slander of their title to the property by DEUTSCHE BANK, and Plaintiffs seek leave of court to amend their complaint to allege such cause of action.

Defendant will not be prejudiced by this amendment.  No discovery has yet been conducted in this case, and the claim for slander of title arises from the same set of operative facts that form the key elements of Plaintiffs' Fraud and UDAP claims. Therefore, Plaintiffs request leave of court to amend their complaint to allege slander of title.

### c. Remaining Claims

Plaintiffs are informed by this court's recent decision in *Phillips v. Bank of America,* 2011 WL 240813 at *11-12 (Jan. 21,

2011), and believes that their causes of action for mistake, breach of fiduciary duty, unconscionability, unjust enrichment, violation of the covenant of good faith and fair dealing, FDCPA violation, and quiet title are unlikely to prevail as written. For that reason, Plaintiffs submit on the pleadings and request leave to amend those claims pursuant to FRCP 15(a)(2).

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully requests that the Court deny DEUTSCHE BANK's Motion to Dismiss the First Amended Complaint.  Plaintiffs further request leave to amend the First Amended Complaint pursuant to FRCP 15(a)(2).

Date: June 15, 2011

        IVEY FOSBINDER FOSBINDER LLLC
        A LIMITED LIABILITY LAW COMPANY


        //s//_____
        JAMES H. FOSBINDER
        *Attorney for Plaintiff*