# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MAURO C. GOROSPE and CAROLINA GOROSPE, as individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>NEW CENTURY MORTGAGE CORPORATION; DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee under Pooling and Servicing Agreement dated July 1, 2004, Morgan Stanley ABS Capital I Inc., Trust 2004-HE5 Mortgage Pass-Through Certificates Series 2004-HE5; BARCLAY CAPITAL REAL ESTATE, INC., d/b/a/ HOMEQ SERVICING; and DOES 1 through 20 inclusive,<br><br>Defendants.<br>_____ | CV. NO.  10-00505 DAE-BMK |

## ORDER: (1) GRANTING DEUTSCHE BANK'S MOTION TO DISMISS; (2) DISMISSING COMPLAINT WITHOUT PREJUDICE AS AGAINST ALL DEFENDANTS; AND (3) GRANTING PLAINTIFFS LEAVE TO AMEND

On August 22, 2011, the Court heard Defendant Deutsche Bank

National Trust Company, as Trustee under Pooling and Servicing Agreement dated

July 1, 2004, Morgan Stanley ABS Capital I Inc., Trust 2004-HE5 Mortgage

Pass-Through Certificates Series 2004-HE5 ("Deutsche Bank")'s Motion to Dismiss First Amended Complaint. James H. Fosbinder, Esq., appeared at the hearing telephonically on behalf of Plaintiffs Mauro C. Gorospe and Carolina Gorospe ("Plaintiffs"), Robert J. Martin, Esq., appeared at the hearing on behalf of Deutsche Bank. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Deutsche Bank's Motion to Dismiss (Doc. # 37), DISMISSES Plaintiffs' First Amended Complaint as against all Defendants, and GRANTS Plaintiffs leave to amend.

## BACKGROUND

On September 1, 2010, Plaintiffs Mauro C. Gorospe and Carolina Gorospe ("Plaintiffs") filed a Complaint against Defendants New Century Mortgage Corporation ("New Century"), Deutsche Bank, Barclay Capital Real Estate, Inc., d/b/a/ HomEq Servicing ("Barclay"), and Does 1 through 20 inclusive (collectively, "Defendants"), alleging that Plaintiffs had been lured into a predatory mortgage loan. ("Compl.," Doc # 1.) On February 22, 2011, Plaintiffs filed a First Amended Complaint ("FAC") against Defendants. ("FAC," Doc. # 31.) Specifically, Plaintiff's FAC alleges the following Counts:

- Count I: Violations of the Clayton Anti-Trust Act (FAC ¶¶ 66–73.)

- <u>Count II</u>:    Violations of the Hawaii Anti-Trust/Anti-Monopoly Acts (<u>Id.</u> ¶¶ 74–77.)

- <u>Count III</u>:    Civil Conspiracy  (<u>Id.</u> ¶¶ 78–82.)

- <u>Count IV</u>:    Fraudulent Misrepresentation  (<u>Id.</u> ¶¶ 83–90.)

- <u>Count V</u>:    Unfair and Deceptive Acts or Practice.  (<u>Id.</u> ¶¶ 91–103.)

- <u>Count VI</u>:    Breach of Fiduciary Duty  (<u>Id.</u> ¶¶ 104–111.)

- <u>Count VII</u>:   Unjust Enrichment  (<u>Id.</u> ¶¶ 112–117.)

- <u>Count VIII</u>: Mistake (<u>Id.</u> ¶¶ 118–119.)

- <u>Count IX</u>:    Unconscionability  (<u>Id.</u> ¶¶ 120–128.)

- <u>Count X</u>:    Intentional Infliction of Emotional Distress  (<u>Id.</u> ¶¶ 129–133.)

- <u>Count XI</u>:    Violations of the Fair Debt Collection Practices Act  (<u>Id.</u> ¶¶ 134–139.)

- <u>Count XII</u>:   Breach of the Covenant of Good Faith and Fair Dealing (<u>Id.</u> ¶¶ 140–143.)

- <u>Count XIII</u>: Complaint to Quiet Title  (<u>Id.</u> ¶¶ 144–149.)

- <u>Count XIV</u>: Negligence  (<u>Id.</u> ¶¶ 150–156.)

Plaintiffs are residents of the County of Maui, State of Hawaii. (Id. ¶ 21.) Plaintiffs executed a mortgage with Defendant New Century on March 18, 2004, which was recorded as Document No. 2004-071671 in the State of Hawaii Bureau of Conveyances on April 8, 2004. (Id. ¶ 28.) The real property at issue in this loan transaction is located at 60 Wilikona Place, Wailuku, Hawaii 96793 (the "Subject Property"). (Id. ¶ 29.)

Plaintiffs allege that the Subject Property was intended as a rental property until such time as Plaintiffs would relocate and move into the Subject Property. (Id. ¶ 37.) Plaintiffs claim they put their trust and confidence in Defendant New Century to properly qualify them for a loan (id. ¶ 40), but that at the time of closing on the loan, they were not provided with time to review the loan application or other associated documents and were not afforded the opportunity to have legal counsel review the detailed documents. (id. ¶¶ 44–45). Plaintiffs further state that Defendant New Century failed to provide timely notice of various legally required disclosures including, but not limited to, the HUD settlement statement and notification of Plaintiffs' other consumer rights. (Id. ¶ 46.) Finally, Plaintiffs assert various allegations regarding the assignment of the mortgage to Defendant Deutsche Bank. (Id. ¶¶ 50–54.)

On April 28, 2011, Deutsche Bank filed the instant Motion to Dismiss First Amended Complaint ("Motion"). ("Mot.," Doc. # 37.) On June 15, 2011, Plaintiffs filed their Memorandum in Opposition ("Opposition"). ("Opp'n," Doc. # 44.) On July 12, 2011, Deutsche Bank filed a Reply in support of its Motion. (Reply, Doc. # 45.)

STANDARD OF REVIEW

I.    Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Review is limited to the contents of the complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994). A complaint may be dismissed as a matter of law for one of two reasons: "(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim." Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984) (citation omitted). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff. See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556–57; see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted).  Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth."  Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief.  See Twombly, 550 U.S. at 570.  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief.  Id. at 586.

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558 (citation omitted). If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

## II.     Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Ninth Circuit law, "Rule 9(b) requires particularized allegations of the circumstances constituting fraud." In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547–48 (9th Cir. 1994) (en banc), superseded on other grounds by 15 U.S.C. § 78u-4.

In their pleadings, plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement. Id. at 1548 (quoting Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989)). "[T]he circumstances constituting the

alleged fraud [must] 'be specific enough to give defendants notice of the particular

misconduct . . . so that they can defend against the charge and not just deny that

they have done anything wrong.'"  Kearns v. Ford Motor Co., 567 F.3d 1120, 1124

(9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 10104, 1019 (9th Cir.

2001)); see also Moore, 885 F.2d at 540 (finding that Rule 9(b) requires a plaintiff

to attribute particular fraudulent statements or acts to individual defendants).

However, "[m]alice, intent, knowledge, and other conditions of a person's mind

may be alleged generally."  Fed. R. Civ. P. 9(b); see also In re GlenFed, Inc. Sec.

Litig., 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply

by saying that scienter existed."); Walling v. Beverly Enter., 476 F.2d 393, 397

(9th Cir. 1973) (finding that Rule 9(b) "only requires the identification of the

circumstances constituting fraud so that the defendant can prepare an adequate

answer from the allegations" (citations omitted)).

A motion to dismiss for failure to plead with particularity is the

functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state

a claim.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003).  In

considering a motion to dismiss, the court is not deciding the issue of "whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) <u>overruled on other grounds by</u> <u>Davis v. Scherer</u>, 468 U.S. 183 (1984).

<u>DISCUSSION</u>

Deutsche Bank contends that the First Amended Complaint is vague and conclusory and therefore should be dismissed for failure to comply with Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6). The Court agrees.

I.     <u>Count I: Violation of the Clayton Antitrust Act</u>

Plaintiffs allege that Defendants "engaged in predatory conduct or anticompetitive conduct" by "monopolizing or attempting to monopolize the mortgage lending and servicing market" in violation of the Clayton Anti-Trust Act, 15 U.S.C. § 12, et seq. (FAC ¶¶ 67–68, 73.) Plaintiffs seek monetary relief for this violation, presumably pursuant to Section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15.

Regardless of the provision purportedly violated, an antitrust plaintiff must demonstrate that the injury in question is "injury of the type the antitrust laws were intended to prevent."[1] <u>Brunswick</u>, 429 U.S. at 489. Indeed, the antitrust laws

---

[1] This is different from antitrust standing. <u>See</u> <u>Cargill, Inc. v. Monfort of Colo., Inc.</u>, 479 U.S. 104, 110–11 nn. 5–6 (1986) (noting that antitrust injury is necessary, but not always sufficient, to establish standing under Section 4 and that the standing analysis under Section 16 may differ from that for Section 4); <u>see also</u>
(continued...)

9

"were enacted for 'the protection of competition, not competitors.'" <u>Id.</u> at 488

(quoting <u>Brown</u>, 370 U.S. at 320); <u>see also</u> <u>Cascade Health Solutions</u>, 515 F.3d at

501–02 (recognizing the Supreme Court's "long and consistent adherence to the

principle that the antitrust laws protect the process of competition, and not the

pursuits of any particular competitor").

 A plaintiff seeking damages pursuant to Section 4 of the Clayton Act

must show causal antitrust injury, and to obtain injunctive relief pursuant to

Section 16 of the Clayton Act, a plaintiff must allege threatened antitrust injury.[2]

<u>Cargill</u>, 479 U.S. at 109–13.  The purpose of the antitrust injury requirement is to

"ensure[] that the harm claimed by the plaintiff corresponds to the rationale for

---

[1](...continued)
<u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Counsel of Carpenters</u>, 459 U.S. 519, 535–46 (1983) (articulating factors that courts should consider when determining whether a plaintiff has standing under Section 4); <u>Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.</u>, 140 F.3d 1228, 1232–37 (9th Cir. 1998) (examining whether a plaintiff had standing to assert claims for damages and injunctive relief under Sections 4 and 16 of the Clayton Act); <u>Amarel v. Connell</u>, 102 F.3d 1494, 1506–07 (9th Cir. 1996) (summarizing the factors relevant to determine whether a plaintiff has standing to pursue a damages claim under Section 4).

[2] Section 4 of the Clayton Act provides treble damages to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15.  Section 16 of the Clayton Act provides that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26.

finding a violation of the antitrust laws in the first place, and it prevents losses that stem from competition from supporting suits by private plaintiffs for either damages or equitable relief."  <u>Atlantic Richfield Co. v. USA Petroleum, Inc.</u>, 495 U.S. 328, 342 (1990).  As such, "[t]o show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior [because] it is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition."  <u>Rebel Oil Co., Inc. v. Atlantic Richfield Co.</u>, 51 F.3d 1421, 1433 (9th Cir. 1995) (citing <u>Atlantic Richfield</u>, 495 U.S. at 334); <u>see also</u> <u>Cascade Health Solutions</u>, 515 F.3d at 902 ("'Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.  The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.'") (quoting <u>Brunswick</u>, 429 U.S. at 489).

In addition to antitrust injury, antitrust plaintiffs must also properly allege a relevant market.  <u>See</u> <u>Newcal Indus., Inc. v. Ikon Office Solution</u>, 513 F.3d 1038, 1044 (9th Cir. 2008) (finding that to state a claim under either Section 1 or Section 2 of the Sherman Act, the plaintiff must sufficiently allege a relevant market).  The Ninth Circuit recently addressed the legal principles that govern

11

definition of a relevant market, and it reaffirmed that a complaint may be dismissed under Rule 12(b)(6) if its relevant market definition is "facially unsustainable." Id. at 1045 (citing Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436–37 (3d Cir. 1997)). The relevant market includes both the product market and the geographic market. Brown Shoe Co. v. U.S., 370 U.S. 294, 324 (1962); Newcal Indus., 513 F.3d at 1045 n.4. As to the product market, it must "encompass the product at issue as well as all economic substitutes for the product." Newcal Indus., 513 F.3d at 1045 (citing Brown Shoe, 370 U.S. at 325). It must therefore include "the group of sellers or producers who have the 'actual or potential ability to deprive each other of significant levels of business.'" Forsyth v. Humana, Inc., 114 F.3d 1467, 1476 (9th Cir. 1997) (quoting Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc., 875 F.2d 1369, 1374 (9th Cir. 1989)); see also Brown Shoe, 370 U.S. at 325 ("The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."). "In limited settings, however, the relevant product market may be narrowed beyond the boundaries of physical interchangeability and cross-price elasticity to account for identifiable submarkets or product clusters." Thurman Indus., 875 F.2d at 1374 (citation omitted). To establish the existence of a legally cognizable submarket, "the plaintiff must be

able to show (but need not necessarily establish in the complaint) that the alleged submarket is economically distinct from the general product market." Newcal Indus., 513 F.3d at 1045; see also Brown Shoe, 370 U.S. at 325 (listing several "practical indicia" of an economically distinct submarket).

Here, contrary to the abundant weight of authority, Plaintiffs devoted merely five words of its sixty-one page complaint to defining the relevant market. Plaintiffs assert that the relevant market is the "mortgage lending and servicing market" (FAC ¶ 68), but the complaint is utterly devoid of any explanation or elaboration to support this contention. For instance, the complaint does not contain any allegations concerning economic substitutes for the proposed product market, and it is entirely unclear to the Court why Plaintiffs defined the relevant market in the way that they did. Moreover, the complaint does not even specify a relevant geographic market.

The Court is also concerned by the vagueness of Plaintiffs' allegations in support of the antitrust claim. As noted, Plaintiffs allege that "Defendants and each of them, have engaged in predatory conduct or anticompetitive conduct in an attempt to monopolize the mortgage lending and servicing market." (FAC ¶ 68.) The complaint, however, utterly fails to set forth any specific factual or legal allegations or to link those allegations to particular statutory violations. Instead,

Plaintiffs allege that Defendants "worked to create the collapse of the mortgage market, which in turn created an economic collapse unprecedented since the Great Depression." (FAC ¶ 71.) Such sweeping statements fail to apprise Defendants of their alleged wrongdoings.

The Supreme Court acknowledged, in a case involving an alleged Sherman Antitrust Act violation, that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." Associated Gen. Contractors, 459 U.S. at 528 n.17; see also Twombly, 550 U.S. at 558 ("[I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery . . . , but quite another to forget that proceeding to antitrust discovery can be expensive."); Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1046–47 (9th Cir. 2008) (concluding that the Supreme Court clarified antitrust pleading requirements in Twombly "because discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case") (citing Twombly, 550 U.S. at 558–59). Because Plaintiffs have provided nothing more than legal conclusions in support of the antitrust claim, this claim must be dismissed.

Accordingly, the Court GRANTS Deutsche Bank's Motion to Dismiss as to Count I of the First Amended Complaint.

II.     Count II: Violations of the Hawaii Antitrust/Anti-Monopoly Acts

In Count II of the First Amended Complaint, Plaintiffs rely on the factual allegations contained in Count I to assert violations of state antitrust laws. Plaintiffs state generally that "[m]ortgage lending and servicing in Hawaii is an activity in or affecting interstate commerce. . . ." (FAC ¶ 75.) Plaintiffs then allege that Defendants have violated "the Hawaii Anti-Trust Act, Hawaii Revised Statutes § 480-13, and the Hawaii Monopolization Act, Hawaii Revised Statutes § 480-9." (FAC ¶ 76.)

The close relationship between federal antitrust law and Hawaii antitrust law has been long established. See, e.g., Robert's Haw. Sch. Bus v. Laupahoehoe Transp. Co., Inc., 982 P.2d 853, 881 n.29 (Haw. 1999) (noting the similarities between Section 2 of the Sherman Act and Hawaii Revised Statute section 480-9.) Indeed, the "[l]egislative history of Hawaii's antitrust law clearly indicates that the state laws are to be interpreted and construed in harmony with analogous federal antitrust laws." Island Tobacco Co., Ltd. v. R. J. Reynolds Indus., Inc., 513 F. Supp. 726, 738 (D. Haw. 1981). Similar to federal law, therefore, Hawaii courts require plaintiffs in antitrust proceedings to plead the

15

"nature of the competition" to "ensure that the injury results from a competition-reducing aspect of the defendant's behavior." Davis v. Four Seasons Hotel Ltd., 228 P.3d 303, 325 (Haw. 2010) (citing and relying on federal law).

As with Plaintiffs' Clayton Act claim, Plaintiffs' state antitrust claim is vague and conclusory and fails to set forth sufficient factual allegations to withstand a motion to dismiss. Broad assertions of state antitrust law violations of the type presented here simply do not give Defendants an opportunity to properly defend themselves. See Iqbal, 129 S. Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."). Accordingly, the Court GRANTS Deutsche Bank's Motion to Dismiss as to Count II of the First Amended Complaint.

III.    Count III: Civil Conspiracy

Count III alleges that the Defendants "agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiffs." (FAC ¶ 79.) According to Plaintiffs, Defendants had a "common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiffs." (Id. ¶ 80.)

This Count is dismissed because Hawaii does not recognize an independent cause of action for "civil conspiracy"—such theories of potential liability are derivative of other wrongs.  See, e.g., Chung v. McCabe Hamilton & Renny Co., 128 P.3d 833, 843 (Haw. 2006); Weinberg v. Mauch, 890 P.2d 277, 286 (Haw. 1995).  Here, in contravention of this principle, Plaintiffs did not link the claim of civil conspiracy with another cause of action.[3]  Further, to the extent that this count is premised at least in part on fraud, Plaintiffs must meet the heightened pleading requirements of Rule 9(b) in alleging a conspiracy.  See Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007) ("Rule 9(b) imposes heightened pleading requirements where the object of the conspiracy is fraudulent." (citation and internal quotations omitted)).  The bald assertions contained in this claim do not satisfy Rule 9(b)'s pleading standard.

Accordingly, the Court GRANTS Deutsche Bank's Motion to Dismiss as to Count III of the First Amended Complaint.

IV.   Count IV: Fraudulent Misrepresentation

Plaintiffs next allege that Defendants "knowingly and intentionally concealed material information from Plaintiffs which was required by Federal

---

[3] Plaintiffs acknowledge as much in the Opposition.  (See Opp'n at 8 (recognizing that "Plaintiffs may not have tied their claim of civil conspiracy to any particular cause of action . . .").)

statutes and regulations to be disclosed to the Plaintiffs both before and at the time of closing." (FAC ¶ 84.) Plaintiffs also assert that Defendants "materially misrepresented or failed to disclose material information to the Plaintiffs with full knowledge by Defendants that their affirmative representations were false, fraudulent and misrepresented the truth at the time said representations were made or were omissions of material fact." (Id. ¶ 85.)

Plaintiffs' vague assertions are insufficient to satisfy Rule 9(b)'s rigorous pleading requirements, which apply to allegations of fraud or mistake. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). As noted, a plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1393 (9th Cir. 1988). Fraud allegations must also include the "who, what, when, where, and how" of the misconduct, and set forth "more than the neutral facts necessary to identify the transaction." See Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009).

Here, with the exception of Paragraph 86, the allegations of misconduct related to this claim are overly broad and general in nature. These assertions do not distinguish between Defendants and are plainly insufficient to

meet Plaintiffs' burden under Rule 8, much less the more rigorous requirements of Rule 9(b) applicable here.

Paragraph 86, the lone paragraph that provides any clarity to the fraudulent misrepresentation claim, is similarly deficient. In this paragraph, Plaintiffs allege several instances of concealment and misrepresentation, but the complaint does not identify who specifically made these misrepresentations or how material facts were concealed from Plaintiffs. Nor do Plaintiffs specify how these representations were false.[4] Without more, the Court cannot conclude that Plaintiffs' vague assertions satisfy Rule 9(b)'s heightened pleading requirement.

Accordingly, the Court GRANTS Deutsche Bank's Motion to Dismiss as to Count IV of the First Amended Complaint.

---

[4] As to Plaintiffs' claim that Defendants "[f]alsely represented that [New Century] transferred its interest in the Mortgage to Defendants [New Century, Deutsche Bank, and Barclay]" (FAC ¶ 92(j)), this contention also fails to meet Rule 9(b)'s requirement that fraud be pleaded with particularity. In this allegation, Plaintiffs are presumably referring to the assignment from New Century to Deutsche Bank, but the complaint is completely devoid of any factual allegations to support Plaintiffs' argument that New Century did not have authority to assign the mortgage. Accordingly, this contention cannot withstand a motion to dismiss.

V.    Count V: Unfair and Deceptive Acts or Practices

Plaintiffs also contend that Defendants have engaged in unfair or deceptive acts and practices in violation of Hawaii Revised Statute sections 480-2(a) and 481A-3.  (FAC ¶¶ 91–103.)

Section 480-2(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  Haw. Rev. Stat. § 480-2(a).  "Two distinct causes of action have emerged under [section] 480-2(a): (1) claims alleging unfair methods of competition; and (2) claims alleging unfair or deceptive acts or practices."[5]  Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc., 148 P.3d 1179, 1207 (Haw. 2006); see also Star Markets, Ltd. v. Texaco, Inc., 945 F. Supp. 1344, 1346 (D. Haw. 1996). Section 481A-3 similarly prohibits "deceptive trade practice[s]."  Haw. Rev. Stat. § 481A-3.

---

[5] Although "[a]ny person" may bring an action for unfair methods of competition in violation of section 480-2, only consumers, the attorney general, or the director of the office of consumer protection may bring an action for unfair or deceptive acts or practices in violation of section 480-2.  Haw. Rev. Stat. § 480-2(d), (e); see also Davis v. Four Seasons Hotel, Ltd., 228 P.3d 303, 307 (Haw. 2010).  A "consumer" is a "natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment."  Haw. Rev. Stat. § 480-1.

Plaintiffs contend that Defendants violated these statutes by: (1) targeting financially unsophisticated and otherwise vulnerable consumers for inappropriate credit products; (2) failing to adequately disclose the true costs and risks of the subject loan and its inappropriateness for Plaintiffs; (3) failing to disclose that the lender approved the subject loan based on financial documents required by Defendants such as tax returns and pay stubs without regard to Plaintiff' ability to sustain the loan with any reasonable means test; (4) falsely representing or failing to fully and completely disclose the amounts Plaintiffs were required to pay; (5) issuing a defective mortgage loan that resulted in little net benefit to Plaintiffs with the primary objective of generating fees; and (6) entering into the public record a materially false document.  (FAC ¶ 96.)

Once again, Plaintiffs provide only labels and conclusions to support this claim.  For instance, Plaintiffs have utterly failed to allege any facts to suggest that Defendants were targeting financially unsophisticated or otherwise vulnerable consumers.  Nor have Plaintiffs proffered facts with respect to Defendants' failure to adequately disclose "the true costs and risks of the subject loan."  There are also no factual allegations to suggest that the lender failed to disclose that it approved loans "without regard to Plaintiffs [sic] ability to sustain the loan with any reasonable means test."  (Id.)  Moreover, Plaintiffs' assertion that Defendants

created a defective mortgage loan that resulted in little net economic benefit to Plaintiffs is so utterly lacking in factual basis that it cannot possibly satisfy federal pleading requirements.

Additionally, Plaintiffs' contentions that Defendants falsely represented the amount Plaintiffs were required to pay, and that Defendants caused to be recorded a materially false document purporting to convey an interest in the Subject Property, sound in fraud. These assertions, couched as legal conclusions, are insufficient to meet Plaintiffs' burden under Rule 8, much less the more rigorous requirements of Rule 9(b) that apply to allegations of fraud or mistake. <u>See</u> Fed. R. Civ. P. 9(b) (requiring a party to state with particularity the circumstances constituting fraud or mistake).

In sum, the instant claim consists entirely of conclusory allegations and vague assertions, which do not satisfy federal pleading requirements and are insufficient to put Defendants on notice of the basis for Plaintiffs' claims. <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949 (finding that a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement") (citation and quotation signals omitted). Accordingly, the Court GRANTS Deutsche Bank's Motion to Dismiss as to Count V of the First Amended Complaint.

VI.    Count X: Intentional Infliction of Emotional Distress

Plaintiffs next assert a cause of action for intentional infliction of emotional distress.  Plaintiffs specifically contend that they "suffered emotional distress in the form of lost sleep, constant worry and grief from the loss of their property. . . ."  (FAC ¶ 132.)

"Under Hawaii law, the elements of IIED are '(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another.'" Enoka v. AIG Haw. Ins. Co., 128 P.3d 850, 872 (Haw. 2006) (quoting Hac v. Univ. of Haw., 73 P.3d 46, 60–61 (Haw. 2003)).  The Hawaii Supreme Court defines the term "outrageous" as conduct "'without just cause or excuse and beyond all bounds of decency.'"  Enoka, 128 P.3d at 872 (quoting Lee v. Aiu, 936 P.2d 655, 670 n.12 (Haw. 1997)).  "Moreover, 'extreme emotional distress' constitutes, inter alia, mental suffering, mental anguish, nervous shock, and other 'highly unpleasant mental reactions.'"  Id. (quoting Hac, 73 P.3d at 60).

Here, Plaintiffs fail to allege any facts to support an inference that Defendants acted in an intentional or reckless manner or that they engaged in outrageous conduct or caused him to suffer severe mental and emotional distress. Plaintiffs' conclusory allegations are once again insufficient to state a claim for

relief.  See Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Accordingly, the Court GRANTS Deutsche Bank's Motion to Dismiss as to Count X of the First Amended Complaint.

## VII.   Count XIV: Negligence

Finally, Plaintiffs assert a cause of action for Negligence, stating first that Defendant New Century was negligent in its execution of the Assignments of Mortgage.  (FAC ¶ 151.)  Plaintiffs further state that Defendant Deutsche Bank owes Plaintiffs, as the borrower, a duty, and was negligent in its processing of the foreclosure on Plaintiffs' home because Defendant knew or should have known, amongst other things, that proper notices were not served for the sale of the property, that there is a lack of standing on the part of the foreclosing entity, and that proper licensing and registration procedures have not been followed.  (Id. ¶¶ 153–54.)  Plaintiffs also allege that as a result of the negligent acts, they have suffered emotional distress and attorneys fees and costs.  (Id. ¶ 156.)

"It is well-established that, in order for a plaintiff to prevail on a negligence claim, the plaintiff is required to prove all four of the necessary elements of negligence: (1) duty; (2) breach of duty; (3) causation; and (4) damages.  Cho v. State, 169 P.3d 17, 12 n. 11 (Haw. 2007) (citing Takayama v.

Kaiser Found. Hosp., 923 P.2d 903, 915–16 (1996)).  Thus, the elements of duty and breach of duty are essential elements of a negligence claim under Hawaii law.

Defendant Deutsche Bank argues that no duty exists between Plaintiffs and Defendants.  (Mot. at 12–13; Reply at 7.)  Indeed, "[c]ourts generally hold that lenders do not owe their borrowers a duty of care sounding in negligence."  Caraang v. PNC Mortg.,- - - F. Supp. - - -, 2011 WL 2470637, at *23 (D. Haw. June 20, 2011) (citing McCarty v. GCP Mgmt., LLC, 2010 WL 4812763, at *6 (D. Haw. Nov. 17, 2010) (citing Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009) ("[A]s a matter of law, [a] lender does not owe a duty in negligence not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay.")(some citations omitted))).  In the instant case, Plaintiffs fail to allege facts showing that their relationship with either New Century or Deutsche Bank was anything other than a borrower-lender relationship.  For that reason, Plaintiffs have not alleged facts showing that New Century or Deutsche Bank owed them a duty of care sounding in negligence.  Further, to the extent Plaintiffs mentions emotional distress in their negligence claim, such a claim also fails.

Accordingly, the Court GRANTS Deutsche Bank's Motion to Dismiss as to Count XIV.

VIII.  Remaining Claims and Leave to Amend

Plaintiffs concede that the causes of action for Mistake (Count VIII), Breach of Fiduciary Duty (Count VI), Unconscionability (Count IX), Unjust Enrichment (Count VII), Violation of the Covenant of Good Faith and Fair Dealing (Count XII), Violations of the Fair Debt Collection Practices Act (Count XI), and Complaint to Quiet Title (Count XIII), "are unlikely to prevail as written."  (Opp'n at 14.)  Plaintiffs therefore request  leave to amend these claims and any others that the Court finds to be deficient.

Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend] when justice so requires."  Further, "requests for leave should be granted with extreme liberality."  <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 792 (9th Cir. 2009).  "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by an amendment."  <u>Id.</u>  "However, 'liberality in granting leave to amend is subject to several limitations.'"  <u>Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.</u>, 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting <u>Ascon Props., Inc. v. Mobil Oil Co.</u>, 866 F.2d 1149, 1160 (9th Cir. 1989)).  "Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay."  <u>Id.</u> (citing <u>Ascon Props</u>, 866 F.2d at 1160).  "Further, '[t]he district court's discretion to deny leave to amend is particularly broad where

plaintiff has previously amended the complaint.'" <u>Id.</u> (quoting <u>Ascon Props</u>, 866 F.2d at 1160).

Due to the deferential standard for amended complaints in this Circuit, the Court will provide Plaintiffs the opportunity to amend the complaint consistent with this Order.  Accordingly, the First Amended Complaint is DISMISSED WITHOUT PREJUDICE as against all Defendants in this action with leave to amend no later than 30 days from the filing of this Order.[6]  Failure to file an amended complaint and to cure the pleading deficiencies will result in dismissal of this action with prejudice.  Plaintiffs are advised that the amended complaint must clearly state how each of the named defendants have injured them, and it must also clearly identify the statutory provisions, if any, under which Plaintiffs' claims are brought.  Moreover, the Court does not here limit Plaintiffs' amended pleading only to the causes of action presently contained in the complaint—Plaintiffs may allege new theories of liability, provided that they are supported by the proper factual and legal basis.

---

[6] The Court notes that Defendant Deutsche Bank requested that Plaintiffs not be allowed to amend their antitrust claims because they are allegedly time barred. (Reply at 8.)  The Court fails to reach this issue, however, as it is not entirely clear on what date Plaintiffs antitrust claims arose.  Further, because Deutsche Bank's request is first mentioned in its Reply, both parties have not had the opportunity to fully brief the issue.

CONCLUSION

For the reasons stated above, the Court GRANTS Deutsche Bank's Motion to Dismiss (Doc. # 37), DISMISSES Plaintiffs' First Amended Complaint as against all Defendants, and GRANTS Plaintiffs leave to amend.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 23, 2011.

_____
David Alan Ezra
United States District Judge

<u>Gorospe v. New Century Mortgage et al.</u>, Cv. No. 10-00505 DAE-KSC; ORDER: (1) GRANTING DEUTSCHE BANK'S MOTION TO DISMISS; (2) DISMISSING COMPLAINT WITHOUT PREJUDICE AS AGAINST ALL DEFENDANTS; AND (3) GRANTING PLAINTIFFS LEAVE TO AMEND